ESTATE OF H. M. HOLLOWAY, DECEASED, HARVEY S. HOLLOWAY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11427. Promulgated May 13, 1948.

*A. Calder Mackey, Esq.,* and *Adam Y. Bennion, Esq.,* for the petitioner.

*E. A. Tonjes, Esq.,* for the respondent.

---

### OPINION.

DISNEY, *Judge*: Petitioner and respondent agree that the question in this case is controlled by the application of section 1000 (d) of the Internal Revenue Code.[1]  The only point on which they disagree is whether any portion of the property which was subject to the gifts in question was received as compensation for personal services actually rendered by the wife.  The respondent contends that the question is purely one of fact and that the petitioner has the burden of showing to what extent the personal services rendered by his wife contributed to the acquisition of the property in question.  The respondent concedes that it is not necessary, in order to come within the meaning of the term "compensation for personal services actually rendered by the wife," that the wife had to render personal services to some third party and to receive compensation therefor.  "It is sufficient if the acquisition of community property under consideration is shown, *to some definite extent*, to have been economically attributable to the wife's personal services."  (Italics ours.)

Language similar to that used by respondent is to be found in the

---

[1] SEC. 1000. IMPOSITION OF TAX.

      *          *          *          *          *          *          *

    (d) COMMUNITY PROPERTY.—All gifts of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country shall be considered to be the gifts of the husband except that gifts of such property as may be shown to have been received as compensation for personal services actually rendered by the wife or derived originally from such compensation or from separate property of the wife shall be considered to be gifts of the wife.

    [*Note:* Section 371, Revenue Act of 1948, amends section 1000 (d) by making it applicable only to gifts made after 1942 and before enactment of the Revenue Act of 1948; therefore, the amendment has no effect in this case.]

regulations, except for the omission of the above italicized words. We find the following statement concerning the interpretation of the applicable provision of the above mentioned section 1000 (d) of the code in Regulations 108, section 86.2 (c) :

Sec. 86.2   Transfers Reached.—*   *   *

\*       \*       \*       \*       \*       \*       \*

(c) *Transfers of community property after 1942.*—During the calendar year 1943 and any calendar year thereafter any gift of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country constitutes a gift of the husband for the purpose of the gift tax statute (regardless of whether under the terms of the transfer the husband alone or the wife alone is designated as the donor or whether both are so designated as donors), except to the extent that such property is shown (1) to have been received as compensation for personal services actually rendered by the wife or derived originally from such compensation, or (2) to have been derived originally from separate property of the wife. The entire property comprising the gift is prima facie a gift of the husband, but any portion thereof which is shown to be economically attributable to the wife as prescribed in the preceding sentence constitutes a gift of the wife.

At no place in the regulations is the term "to some definite extent" used, nor does it appear that such is required by the language of the code itself. Respondent's position is that the facts presented under the statute and regulations do not prove petitioner's case. The fact that decedent's wife, in the early days of the development of the gypsum interest, would take him his lunch and drinking water is no showing that any portion of the property here in question is to be economically attributable to her services, for it indicates nothing more than a wife's usual duty. The fact that she took care of the property when decedent was working at the gasoline plant and when he was away developing sales for the gypsum does indicate some contribution of a different nature. The fact that when money was borrowed the notes were signed by both decedent and his wife indicates a real contribution by her to the development of the business, perhaps commensurate with its size at that time, but obviously it does not comply with the statute nor the regulations, which require that the source of the gift be traced to personal services actually rendered. Again, the fact that decedent and his wife entered into an agreement that half of anything they made would be hers if she would stay at Lost Hills and help him is evidential in a sense as to her activity, but plainly the statute requires, not contract, but personal services.

No cases cited to us, and none revealed by our search, have covered the question as to what constitutes "personal services actually rendered by the wife" as the term is used in section 1000 (d) of the Internal Revenue Code.* On that phrase the regulation is of no help. Upon examination of all of the facts presented by the record, we have found

as a fact that decedent's wife at one time contributed some services. Is the gift of stock economically attributable thereto? We do not so consider. The services were performed, in the main, in the earlier years and it appears that there was only a small amount of savings by 1937, when the Lang lease was taken over, after which she seems to have performed no services. Thus there is a break in the connection between her services and any later business or property. Though there is evidence that the property which was turned over to the corporation for stock which was the subject of the gift here involved was accumulated by the decedent and wife after 1933, in the light of the further evidence indicating no services after 1937, we can not say that the property given away in 1944 was economically attributable to her services.

Another difficulty with petitioner's theory here is the fact that the stock donated was issued in part for leases from Security Oil Co. and Richfield Oil Corporation. No showing is made to connect these leases in any way with the wife's personal services. Yet they may have constituted in large degree the consideration for issuance of the stock. We note too from the evidence that the Lang property, earlier held, was not transferred to the corporation, but that the corporation entered into a mining contract with the decedent, and the corporation operated thereunder. Even if the wife had contributed personal services to the Lang lease—and she "never went there very often. I went a few times"—the lack of connection or economic attribution between the corporate stock donated and her services is plain; and, of course, it is plainer as to the period prior to the Lang lease and to 1937, by which time such services as she had contributed had resulted in accumulation of "practically nothing." In the light of the evidence, the statute and the regulation interpreting it, we hold that decedent's wife did not contribute such services as to bring her within the meaning of section 1000 (d) of the Internal Revenue Code and that one-half of the property transferred to the donees was not received as compensation for personal services actually rendered by her.

Reviewed by the Court.

*Decision will be entered for the respondent.*

———

JOHNSON, *J.*, dissenting: In my opinion the facts found disclose participation by the wife in decedent's business to a degree which greatly exceeds "a wife's usual duty" and supports a conclusion that her personal services were a substantial factor contributory to business success and were commensurate with decedent's efforts in the early years. During those years decedent was employed, sometimes at a great dis-

tance from the gypsum deposits. During his absences the wife managed their private enterprise, and when he was present, she assisted in the details of operation and accounts. Because her services were valuable, decedent dissuaded her from returning to Los Angeles, although their condition of life near the deposits was not pleasant. I am unable to agree with the majority view, feeling that her services were of the type which have supported contrary conclusions in *Estate of Frank D. Neumann*, 9 T. C. 1120, and E. T. 20, 1947–2 C. B. 207.

LEECH, *J.*, agrees with this dissent.