In re HOLLOWAY'S ESTATE.

HOLLOWAY v. COMMISSIONER OF
INTERNAL REVENUE.

No. 12033.

United States Court of Appeals
Ninth Circuit.

June 14, 1949.

A. Calder Mackay, Arthur McGregor, Howard W. Reynolds and Adam Y. Bennion, Los Angeles, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Louise Foster and Carlton Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before: DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

Decedent, in 1932, obtained work near Lost Hills, California as night watchman for an oil company. He was then 63 years

of age. He lived in a small galvanized iron shack in which he built a bed of rough lumber and to which he piped water, constructing a stove of an oil drum using gasoline for fuel. Following an injury in 1933, his wife, then 57, joined him. Current expenses exhausted his entire $100 per month salary and they had no other funds.

Decedent soon became attracted by a nearby area showing outcroppings of gypsum and he obtained a lease of this on a royalty basis. Shoveling by hand, he extracted the gypsum and sold it to nearby farmers as a soil conditioner. Later he rented a tractor and plow but he retained his position as a night watchman until 1935. His wife supplied him with food and water as he worked under the hot sun. She also took full and complete charge of the loading and weighing, etc., of the gypsum during decedent's frequent journeys to promote sales and while he worked on other wells, he being absent as long as six weeks. In the evenings, she also materially assisted decedent in the computation of poundages and accounts. Employees who were compensated by room and board were cared for by the wife. Monies necessary to maintain the venture were obtained on their joint credit and all funds were kept in a joint bank account.

In 1934 or 1935, during particularly trying circumstances, the wife proposed that she secure employment elsewhere. Decedent pleaded that the need for her was greater in Lost Hills and she remained on agreement that one-half of everything would be hers.

In 1937, other properties were leased by decedent and his wife and operated on a royalty basis. This proved more profitable, and as men were employed both were relieved of much of the labor. In 1939, a daughter and son-in-law came to live with them and the wife's burden was further eased. The community undertaking was incorporated in 1944 and 800 shares of common stock issued. Three weeks later, gifts totalling 777 shares were made to the son, daughter, and son-in-law of decedent and wife. Separate gift tax returns were filed by decedent and wife, each reporting one-half of these several gifts of stock. The Commissioner determined that 26 U.S.C.A. § 1000(d), then in force, required the entire gift to be taxed to decedent alone, and assessed a deficiency of $6,421.41. His conclusion was upheld by a divided Tax Court, from which decision, the decedent's estate appeals. 10 T.C. 828.

The applicable law[1] and regulations[2] provide that gifts of community property shall be taxed as if gifts of the husband alone unless the subject matter of the gift is derived from properties economically attributable to the wife, or from her

---

[1] "(d) Community Property. All gifts of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country shall be considered to be the gifts of the husband except that gifts of such property as may be shown to have been received as compensation for personal services actually rendered by the wife or derived originally from such compensation or from separate property of the wife shall be considered to be gifts of the wife."

Sec. 371 of the 1948 Revenue Act added: "This subsection shall be applicable only to gifts made after the calendar year 1942 and on or before the date of the enactment of the Revenue Act of 1948."

[2] Treas. Reg. 108, § 86.2(e) "Transfers of community property after 1942— During the calendar year 1943 and any calendar year thereafter any gift of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country constitutes a gift of the husband for the purpose of the gift tax statute (regardless of whether under the terms of the transfer the husband alone or the wife alone is designated as the donor or whether both are so designated as donors), except to the extent that such property is shown (1) to have been received as compensation for personal services actually rendered by the wife or derived originally from such compensation or (2) to have been derived originally from separate property of the wife. The entire property comprising the gift is prima facie a gift of the husband, but any portion thereof which is shown to be economically attributable to the wife as prescribed in the preceding sentence constitutes a gift of the wife."

674

separate property. In other words, community property is taxed to one spouse or the other on the basis of source.

■ The general basic intent of community property laws is to provide a return to the wife for her labors in the home which are legislatively considered to be substantially commensurate with the efforts of the husband in marital economic gain.[3] This basic situation, however, is true in all states, and since the purpose of the Federal tax amendments here involved was to end discrimination in favor of community property states,[4] the standard of economic attribution to the wife must, of logical necessity, be the measure of something above her "usual domestic" duties. In other words, the property which is the subject of the gift must have arisen out of her more direct economic activity. When the joint efforts of husband and wife combine to effect the economic gain which is called community property and which property is made the subject of a gift, the tax should be assessed in proportion to the effective efforts of each in such gain.

■ We agree with the dissenting judges below that here the resultant of joint marital effort was in substantial part the product of the labors of the wife which in no way can justly be classified as "usual domestic duties." We hold that those labors were a substantial contributing factor in the success of the community enterprise; especially in the early years her efforts were wholly commensurate with decedent's own. She actively participated in the planting and husbanding of the tree and she should not be denied her proper allocation of its fruits.

■ There is still further reason why this case should be reversed. The Tax Court found that the wife remained in this desolate locale, in meager and uncomfortable circumstances, and continued her vital and active participation in the venture at the behest of decedent and because of his offer that she would have "half of anything they made." The Tax Court recognized the contract, but refused it effect except as "evidence" of her participation. Since one-half the venture already belonged to the wife by virtue of California community property law,[5] which the parties at all times recognized, the contract could only have had the effect of making one-half of what they thereafter "made" in the undertaking the separate property of the wife. Otherwise a contract of that character made under the conditions here shown would be utterly void of any meaning whatever. The contract was not disputed and remains as an established fact in this case. This evidence supports a rational conclusion that from and after the contract was made decedent and his wife informally occupied the position of partners, permissible under California law.[6] Thus one-half of each gift was the "separate property of the wife" under the third alternative of the gift tax statute.[7]

■ The Commissioner asserts that the profits of the enterprise were made subsequent to 1937 when active participation of the wife had begun to diminish. This overlooks her active participation in laying the necessary foundation of the business and the fact that one-half of the enterprise was separately hers. We think that her interest could not and should not be held lost to her because of an expected

[3] 11 Am.Jur., Community Property, § 5 (1937); See 11 Wash.L.Rev. (1936), for a thorough analysis of the many phases of community property law. Note especially, Kirkwood, History of Community Property at p. 1, and Powell, Critique of Community Property at p. 11.

[4] Paul, Federal Estate and Gift Taxation, (1946 Supp.) § 16.17; compare, 21 Taxes—The Tax Magazine 429-31 (Aug. 1943), and 643, 660, and 674 (Dec. 1943); 23 Taxes—The Tax Magazine 326 (Apr. 1945).

[5] See Calif. Civil Code, §§ 161a, 164, 172, 172a and 687; Gillis v. Welch, 9

Cir., 1935, 80 F.2d 165, certiorari denied 297 U.S. 722, 56 S.Ct. 668, 80 L.Ed. 1006.

[6] See 158, Calif.Civil Code. "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts."

[7] See footnote 1.

gradually decreasing participation due to age and the measure of success which permitted securing employees.

Reversed.